OPINION AND ORDER
LUI-FRANK, Justice, delivered the opinion of the Court.
The appellant is Carmela Concho, a supervisor at the Nation’s Family Community Services agency. She was the respondent in the trial court. The appellee, who was petitioner in the trial court, is Michele Kill Antone, a.k.a. Guerrero, guardian for an incapacitated adult, Benjamin Kill, Jr. The Record refers to Ms. Guerrero as Ms. Antone, and we do so in this opinion for consistency.
This is an appeal from the trial court’s decision of October 10, 2003, denying the appellant’s motion for reconsideration of the trial court’s Injunction Prohibiting Harassment. The appellant filed an Opening Brief. The appellee has not filed a Response Brief.
For the reasons stated below we find that
1. The trial court erred when it issued an Injunction against the appellant as an individual, rather than in her official capacity for actions as an employee of Family Community Services [also referred to herein as “FCS”], a department of the Fort McDowell Yavapai Nation, a federally recognized Indian tribe. The only evidence before the court was about appellee’s interaction with FCS employees over time, and with Ms. Concho as an FCS employee since 2003.
2. The court erred in applying Arizona Revised Statutes [“A.R.S.”] section 13-2921, part of the Arizona Criminal Code. The applicable standard for harassment is set forth in the Fort McDowell Yavapai Nation [“FMYN”] Law and Order Code, section 6-56. Section 5-1 of the FMYN Law and Order Code requires application of the Nation’s laws, unless the subject matter is not covered by said laws, in which case the courts may look to United States federal law.
3.The trial court denied due process to the appellant by denying the right to cross-examine the witness below and to present testimony.
Proceedings in the Trial Court
On August 13, 2003, Ms. Antone filed a Petition for Injunction Against Harassment, identifying Carmela Concho and Family Community Services as respondents. The petition alleged that Ms. Con-cho’s actions jeopardized Mr. Kill’s health and welfare, referring specifically to a weekend when Mr. Kill was allowed to stay away from the facility where he was living, beyond a planned birthday visit to the Nation’s reservation, and without prior communication, discussion or arrangement with Ms. Antone, the legal guardian for Mr. Kill. On that weekend, Mr. Kill reportedly drank alcohol, did not take his medicine and suffered six seizures, requiring treatment at the Emergency Room. Ms. Antone alleged that she had agreed with her brother’s return to the Nation for his birthday on August 7, 2003, a Thursday, but she did not make any plans for him to stay for the weekend. Ms. Antone stated in the petition that
[rjespondent Carmela Concho does not respect me in regards to my role as a Guardian. She has gone behind my back making decisions without my input. I have spoken to her about this and she still continues to do so and I believe her actions have jeopardized the health and welfare of my brother.
*138 The Injunction was signed on August 13, 2003, and filed August 14, 2003, ordering “Carmela Concho of FCS” to have no contact with Ms. Antone or Benjamin Kill, Jr. The Injunction was based upon the court’s review of the petition and “other pleadings”, and after a hearing.[1] The Injunction has a boxed section titled “Warning”, in which the respondent is informed, among other things, of the right to a hearing within ten days of a written request filed with the court, unless the court finds compelling reasons to continue the hearing beyond that time. The Certificate or Affidavit of Service shows that Ms. Concho was served with the Petition and Injunction Order on August 15, 2003. A Motion for Reconsideration was filed on August 20, 2003 on behalf of Ms. Concho. In the motion respondent did not deny Ms. Con-cho’s involvement in Mr. Kill’s extended visit, after his August 7, 2003 birthday, but asserted that her actions were pursuant to an Order of the court in case number DR-98-001, which was attached as Exhibit “A” to the motion. In that 1998 Order Mr. Kill was adjudicated an incapacitated and incompetent adult, and Ms. Antone was appointed his legal guardian. Family Community Services was ordered to monitor Mr. Kill and report any change in circumstances that would require a change in his status. The respondent also offered a signed written request, purportedly from Ms. Antone, signing as Michele Guerrero, asking for approval to have Mr. Kill remain for a weekend visit, and stating that Ms. Antone would take full responsibility. The trial court hearing on the Motion for Reconsideration was held on October 6, 2003.[2] According to the transcript of the heating, the court announced the case as “Michele Antone versus Carmela Concho as an individual ” (Transcript, p. 2, lines 3-4) (emphasis added). The respondent’s counsel requested clarification, and the court explained that the reference in the Injunction to “Carmela Concho of FCS” as the respondent was to refer to an address for Ms. Concho, and that the injunction was not directed to Family Community Sendees. An Assistant General Counsel for the Nation, representing respondent, stated that she was representing Ms. Con-cho in her capacity as Acting Supervisor of Family Community Services, in order to bring to the court’s attention information “pertinent” to a decision to issue an injunction prohibiting harassment. The respondent attached two exhibits to the Motion for Reconsideration and informed the court that Ms. Concho was available to testify on the services she and the department provide for Mr. Kill. The court denied the offer of testimony, stating “I don’t feel that necessary right now.” (Transcript, p. 4, lines 11-23)
Ms. Antone then made her argument, detailing the history of her role in caring for her brother sinee 1998, when he became comatose from use of drugs and alcohol.(Transcript, pp. 5-18, 19-20) She explained that she approached Family Community Services [hereinafter referred to as “FCS”] for help in placing Mr. Kill, and that he was placed in various facilities by FCS personnel, before Ms. Con- *139 cho joined the agency. Ms. Antone had difficulties with some of these facilities, apparently because they did not recognize or acknowledge her authority as legal guardian under the 1998 Order. Mr. Kill apparently signed forms with one or more facilities purportedly contracting for care and services, resulting in liabilities and legal claims that Ms. Antone has had to address. Ms. Antone attributed many of the problems to the failure of FCS to monitor Mr. Kill’s situation, and to help her. Ms. Antone also identified feeling that she was not welcomed after Ms. Concho joined the agency, when she would stop by Ms. Concho’s office to discuss her brother. She also stated that she learned that her brother was requesting services and that she welcomed the news. This meant that he was being brought to the community for visits and services. Ms. Antone stated that she told Ms. Concho that Mr. Kill should be brought to the court for a review, which was long overdue. She also stated that she asked Ms. Concho to look into the Suncrest account, Suncrest being one of the facilities with a claim for services for Mr. Kill. She did not get a response and told the court that “these people have done nothing for me.”
Ms. Antone explained further that the weekend visit after August 7, 2003 occurred without her prior knowledge. On August 7, 2003, Mr. Kill was at the community gym and Ms. Antone was going to give him money he requested. He told her that Social Services had given him permission to stay over the weekend, and he gave her a note he said was from the driver. (FCS provided Mr. Kill with transportation to and from the facility where he lived at the time.) Mr. Kill also told Ms. Antone that the driver wanted Ms. Antone to sign the form. Ms. Antone testified that she signed “under duress”, and told the driver that these decisions require talking to her first. The driver allegedly said that “Carmela said to sign this”. Ms. Antone signed the form, “because once you tell my brother something you have to follow through with it, because if you don’t what’s going to happen when he goes back. He’s going to have a hunger strike. He’s not going to bathe. These are the things that I have to put up with. This is what the staff calls me about.” Ms. Antone said that she did not place all the blame on Ms. Concho because she was new to her job, but Ms. Antone believed that Ms. Concho should have done some things about the pending problems when she started work on the case for FCS.
Respondent pointed out to the trial court that Ms. Antone’s statements related to the conduct of FCS as a whole. The court acknowledged the point and explained that “... on record that day I said do you want it against FCS or do you want it against Camela Concho, and on the record she did say Carmela Concho as an individual. I specifically asked that on record and that’s why all the pleadings have been—the last pleadings you will note it says Carmela Concho as an individual.[3] It doesn’t say Carmela Concho and Family Community Services. So that’s—I want to make sure. I make that distinction on more than one document because I didn’t want any confusion.” (Transcript, p. 20, lines 16-24)
The transcript (p. 21, lines 6-14) goes on to show that the respondent’s counsel sought clarification of the date of the Injunction to see if Ms. Concho was available *140 to attend the hearing prior to its issuance. The court stated to respondent’s counsel: “... And it was an ex parte hearing and we gave the information that if you wish to contest it that you may approach the—that you may ask for a hearing. At that time you filed a motion for reconsideration to do that. She did not come in to say yes I want to answer that. She went to you and you answered instead. So we gave her the opportunity. She deferred to you to make that decision, and so that’s what happened.”
The court denied respondent’s motion for reconsideration, citing A.R.S, section 13—2921(d), defining the criminal offense of “Harassment”, which the court believed was adopted as part of the wholesale adoption by the Nation of the Arizona Code.(Order on Motion for Reconsideration, p. 2) The court found that the only requirement for violation of that section was that Ms. Antone was annoyed at the behavior and conduct of Ms. Concho, and Ms. Antone had established that she was annoyed. “I mean she is annoyed and that meets the Code provisions. She just has to be annoyed and that’s all. So if she wants to be annoyed with Ms. Concho for whatever reason. I mean it could be founded or unfounded. It doesn’t make any difference.” (Transcript, p. 24, lines 8-13)
Issues on Appeal
The issues presented by appellant are as follows:
1. Whether the trial court erred in not hearing testimony from respondent Carmela Concho to establish that Ms. Concho had no contacts in her individual capacity with Ms. Antone, and that her only contacts with Ms. Antone were as a result of her job with FCS.
2. Whether the trial court erred in applying the Arizona harassment statute when the Fort McDowell Yava-pai Nation Law and Order Code is the controlling law on the issue of harassment.

The Finding of Fact and Conclusion of Law

The trial court’s finding of fact is fairly simple: Ms. Concho made Ms. Antone unhappy and annoyed. After the hearing on the Motion for Reconsideration, on page 2 of its Order denying the Motion, the trial court found that Ms, Antone voiced her displeasure at how miscommunication, perceived lack of respect, and inadequate monitoring of nursing home costs are costing her time, money as well as time in court. Ms. Antone is extremely unhappy with her working relationship with Ms. Concho and perceives Ms. Concho to be disrespectful towards her. The lack of follow through on nursing home billings from one institution to another is lack of monitoring and causing lawsuits for her.
In the transcript of the hearing on the Motion for Reconsideration (Transcript, lines 11-23, page 4), appellant requested the opportunity to provide the testimony of Ms. Concho, and the court denied the request. The court explained that A.R.S. section 13-2921 on harassment requires only that Ms. Antone had to be annoyed at Ms. Concho’s behavior. The court found that as a matter of fact Ms. Antone was annoyed at Ms. Concho, and as a matter of law, Ms. Concho, an individual, had harassed her. (Transcript, page 22, lines 5-13; page 24, lines 8-13) Therefore, the injunction was to remain in effect.
The court made no factual finding that Ms. Concho engaged in conduct with Ms. Antone in any other capacity except as an employee of FCS, a tribal government agency.
*141 Discussion
Our consideration of the appeal is limited to review of the findings of fact, conclusions of law and judgment of the trial court. Appellee was not represented by legal counsel on appeal. She appeared at the oral argument of the appeal, and presented her case. Appellee did not contest any of the allegations of the appellant in her oral argument. She repeated her anger, annoyance and frustration at several years of taking care of her brother, dealing with the nursing homes, not having help from her family, feeling that several FCS workers and Ms. Concho had not done what she needed, and feeling at the end of her level of tolerance when her brother did what he did on the August weekend, and she could not be there for supervision.
In this case there has not been a trial; the injunction was issued against a party who was not heard, and the trial court did not consider the applicable law under the facts asserted by the appellant. We therefore reverse the trial court’s judgment.
The court erred when it cited A.R.S. § 13-2921 as the controlling law on harassment. Even if the court were correct in relying on that provision, the court erred in finding that the standard set forth in § 13-2921 was a subjective standard: “I mean she is annoyed and that meets the Code provisions. She just has to be annoyed and that’s all.” (Transcript, p. 24, lines 8-13) The standard in § 13-2921 is that of a “reasonable person”. If the standard were subjective, then almost anyone could obtain an injunction for harassment against any person for any reason, or no reason.
The correct statute governing harassment on the Nation’s reservation is section 6-56 of the FMYN Law and Order Code:
HARASSMENT.
(a) A person commits harassment if, with the intent to harass or with the knowledge that the person is harassing another person, the person:
(1) anonymously or otherwise communicates or causes a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses.
(2) continues to follow another person in or about a public place for no legitimate purpose after being asked to desist.
(3) repeatedly commits an act or a series of acts that harasses another person.
(b) For the purposes of this section, “harassment” means conduct directed at a specific person which would cause a reasonable person to be seriously alarmed, annoyed or harassed and the conduct in fact seriously alarms, annoys or harasses the person and which serves no legitimate purpose.
(c) Any person convicted of harassment shall be sentenced to imprisonment for a period not to exceed one hundred twenty (120) days or to a fine not to exceed four hundred dollars ($400.00), or both such imprisonment and fine, with costs.
This section also uses the “reasonable person” standard, and requires an intent to harass or knowledge that one is harassing another, that the other person is reasonably and seriously alarmed, annoyed or harassed, and that the conduct of the person served no legitimate purpose.
More fundamentally, the trial court was in error in denying appellant the right to be heard prior to the issuance of the injunction against her. No emergency existed justifying the trial court in acting ex parte. Moreover, if an injunction could *142 have been justified in this ease, it should have been directed against appellant in her official capacity. The decision below is reversed and the ease is remanded for entry of judgment for appellant.

. The Record on Appeal does not include any pleading other than the original Petition for Injunction against Harassment, nor is there any transcript of the hearing that took place at the time of the Petition and issuance of the Injunction.

. If the Motion for Reconsideration were considered the respondents’ written request for a hearing on the Injunction, then the hearing in October was untimely because it was held more than ten days after the request. There is no record of a finding of compelling reasons for the delay. The respondent did not raise the issue in the trial court, and the issue is riot before this Court.

. The reference is not clear, because no pleading states that Carmela Concho is sued as an individual.